# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Efrain Reyes Knowles, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER RE § 1915A SCREENING** |
| | ) | |
| vs. | ) | |
| | ) | |
| North Dakota Department of Corrections | ) | |
| James River Correctional Center, | ) | Case No. 1:18-cv-034 |
| | ) | |
| Defendants. | ) | |

Plaintiff Efrain Reyes Knowles ("Knowles") is an inmate at the James River Correctional Center ("JRCC") in Jamestown, North Dakota. He initiated the above-entitled action *pro se* in February 2018 with the submission of an incomplete "PLRA packet." (Doc. No. 1). On March 14, 2018, he filed a complete "PLRA packet" along with an application to proceed *in forma pauperis*, which the undersigned granted. (Doc. Nos. 3,4, and 10). On March 23, 2018, he filed notice of his consent to the undersigned's handling of this case. (Doc. No. 9).

Knowles' Complaint is now before the court for an initial review pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, Knowles shall have until July 30, 2018, to file an Amended Complaint.

## I.     BACKGROUND

On March 23, 2018, Knowles filed "Form Complaint" presumably provided to him by the Clerk's Office. Therein he names the North Dakota Department of Corrections and Rehabilitation and the JRCC as defendants. He then goes on to assert the following the under the heading "Statement of Claim:"

Mi left side intesting

1

> And were i process liquid
> hurts every time i eat
> and drink water the pain
> is so painful i feel its gonna
> failed and its gonna be to late.
> Please help me. Please dont let me
> die. Please i beg u.

(Doc. No. 12) (errors in original).[1] He seeks $1 billion in damages, access to the best surgeon, and a hearing before the United States Supreme Court with the President of the United States at his side. (Id.).

On April 15, 2018, Knowles filed a copy of "doctor call notes" to supplement to his Complaint. (Doc. No 13). The notes, dated November 16, 2017, state that a trace of blood had been detected in Knowles urine and that he would be rechecked in a few weeks. (Id.).

On April 23, 2018, Knowles filed a second supplement to his Complaint. (Doc. 14). The supplement consists of: (1) a copy of an April 9, 2018 "sick call inmate request" listing without explanation internal bleeding as the nature of the request; and (2) a handwritten note, dated April 6, 2018, in which Knowles complained to Officer Carpenter that he was experiencing significant side pain and different symptoms. (Id.).

## II. STANDARDS GOVERNING INITIAL REVIEW

Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA") to address the burden imposed by prisoner suits that are too often frivolous and without merit. Jones v. Bock, 549 U.S. 199, 203-04 (2007); Woodford v. Ngo, 548 U.S. 81, 84 (2006). One of the reforms enacted as part of the PLRA for cases in which prisoners are seeking to sue a governmental entity, officer, or employee requires courts to conduct an early screening to weed out claims that clearly lack merit.

---

[1] Under this heading is the following question: "Are you claiming any physical injury?" (Doc. No. 12). Knowles answered this question in the negative. (Id.)

2

28 U.S.C. § 1915A. In conducting the screening, the court is required to identify any cognizable claims and to dismiss the Complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. Id.

In screening a *pro* se prisoner Complaint, the court is obligated to construe it liberally and hold it to a less stringent standard than what normally would be required of attorneys. Id.; see also Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015) ("When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.") (internal quotation marks omitted). This does not mean that the court must accept everything or anything that is filed by a prisoner proceeding *pro se*, however. In enacting the screening requirement, Congress obviously expected it to be more than an a ritualistic exercise and that courts would only allow to go forward those claims that are cognizable, that seek relief from a non-immune party, and that are not obviously frivolous or malicious.

To meet the minimal pleading requirements of Rule 8(a)(2) for stating a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007) ("Twombly"). The complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 555). Also, it must state enough to satisfy the "plausibility standard" for stating a cognizable claim as established in Twombly and further amplified by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 678-84 (2009) ("Iqbal"). And, even though a *pro se* prisoner Complaint is entitled

3

to a liberal construction, these minimal pleading requirements must still be satisfied. E.g., Story v. Foote, 782 F.3d 968, 969 ("To state a claim, . . . [the *pro se* prisoner's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation marks omitted and citing Twombly and Iqbal). Complaints that offer nothing more than labels and conclusions or a formulaic recitation of the elements are not sufficient. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 680-81. Frivolous claims are those that are clearly baseless, fanciful, fantastic, or delusional. See Denton v. Hernandez, 504 U.S. 25, 32-34 (1992).

To state a claim under 42 U.S.C. § 1983, a plaintiff must normally allege a violation of a right secured by the Constitution or the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157 (8th Cir. 1997). Even under liberal pleading standards, a *pro se* litigant, at the very least, must invoke rights under the Constitution or federal law in order to plead a § 1983 claim. Walker v. Reed, 104 F.3d at 157-58. Also, the pleading must allege a sufficient causal link between the alleged violation and the basis upon which the particular defendant is to be held responsible, keeping in mind that persons sued in their individual capacities must be personally involved or directly responsible since § 1983 does not impose *respondeat superior* liability. Iqbal, 556 U.S. at 676-77; Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999).

Finally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim. The court may accept as true all facts pled in the Complaint and conclude from them that there is no claim as a matter of law. E.g., Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753-54 (7th Cir. 2002) (citing other cases).

4

## III. DISCUSSION

The Eighth Amendment requires that the Government "provide medical care for those whom it is punishing by incarceration." Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002). In Jolly v. Knudsen, the Eighth Circuit described the extent of this constitutionally imposed duty and what is required to prove a breach:

> Prison officials or their agents violate the eighth amendment if they commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Our court has interpreted this standard as including both an objective and a subjective component: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir.1997). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995).

Jolley v Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000); see also Phillips v. Jasper County Jail, 437 F.3d 791, 795 (8th Cir. 2006); Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991) ("Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment . . . but a "mere disagreement with the course of [the inmate's] medical treatment [does not constitute] an eighth amendment claim of deliberate indifference."). In light of these substantive requirements, an inmate must allege that he or she suffered an actual or imminent injury that is sufficiently serious to give rise to an Eighth Amendment violation in order to state a cognizable claim. Smith v. Arkansas Dep't. of Corrections, 103 F.3d 637, 643 (8th Cir. 1996) (citing Lewis v. Casey, 518 U.S. 343 (1996)); see also Maurice B. Madison-Bey v. Correctional Medical Services, 180 Fed. App'x 608, 2006 WL 1278690 (8th Cir. 2006) (unpublished *per curiam* decision upholding the dismissal of a § 1983 claim for failure on the

5

part of the plaintiff to allege that he had suffered harm as a result of an unconstitutional policy or custom). "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should be measured by reference to the *effect* of delay in treatment." Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005).

In the case at bar, Knowles asserts that he is suffering from intense pain. From the supplemental materials filed by Knowles in support of his Complaint, one could arguably conclude that Knowles is frustrated by staff's response or lack thereof. Construing Knowles' submissions liberally and giving him the benefit of all doubt, the court cannot conclude at this point that his pleadings are utterly devoid of any cognizable claim. This is not to say that Knowles' pleadings are not without their problems, however.

It is well settled that the State of North Dakota and its agencies cannot be sued for monetary damages because: (1) they are not considered "persons" within the meaning of 42 U.S.C. § 1983; and (2) State is immune under the Eleventh Amendment from any claims for monetary damages in a § 1983 action. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 & 70 (1989); Alsbrook v. City of Maumelle, 184 F.3d at 1010. Thus, an award of monetary damages from either the Department of Corrections or JRCC, the only named defendants, is simply not in the cards for Knowles.

As for Knowles demand for a hearing before the North Dakota Supreme Court with the President at his side, it only serves to lend his pleadings an air of frivolity.

**IV. CONCLUSION**

Knowles shall have until July 30, 2018, to file an Amended Complaint. Absent the submission of an Amended Complaint, the court may by separate order permit Knowles to proceed

with a claim for injunctive relief only against the named defendants. In the interim, the Clerk's office shall refrain from serving Knowles' Complaint upon defendants and await further instruction from the court.

**IT IS SO ORDERED.**

Dated this 5th day of July, 2018.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court